UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

-----------------------------------------------------------------

14-MC-36(S)

In re

      Lenny Perry's Produce, Inc.              Case No. 09-10297 K

                          Debtor

-----------------------------------------------------------------

The PACA Trust Creditors of Lenny Perry's
Produce, Inc. c/o Martyn and Associates

              Plaintiffs

      -vs-                       AP No. 09-1269 K

Genecco Produce, Inc. and David Genecco

              Defendants

-----------------------------------------------------------------

Ryan M. Gembala. Esq.
Devin J. Oddo, Esq.
Martyn & Associates
820 Superior Avenue NW, 10th Floor
Cleveland, OH   44113

Attorneys for Plaintiff


David L. Rasmussen, Esq.
Curtis Alan Johnson, Esq.
Davidson Fink, LLP
28 East Main Street, Suite 1700
Rochester, NY   14614

Attorneys for Defendant

REPORT AND RECOMMENDATION TO THE UNITED STATES

DISTRICT COURT, WDNY (SKRETNY, J.)


In a Decision and Order dated August 24, 2015, Your Honor remanded this writer's earlier Report and Recommendation for further proceedings regarding two questions that were inadequately answered in that Report and Recommendation.  Why shouldn't the PACA Trust "stand in the shoes" of Lenny Perry's Produce, Inc., (hereinafter "Lenny Perry's") so that the Defendants would be entitled to a 100% set-off of what otherwise would be a substantial liability (more than $107,000) to the Trust?  Secondly, if a money judgment is to issue against Genecco Produce, Inc., why should it not also issue against David Genecco personally?

After this writer communicated with counsel, there was no disagreement that those were the two questions that had to be answered on remand.  Oral argument was set for November 17, 2015, without objection.  At oral argument on that date the pertinent issues were refined.  The transcript of that oral argument is attached to this Report and Recommendation.

It is helpful to bear in mind that although this seems to be a dispute between the PACA Trust and the Genecco Defendants, the PACA Trust represents other growers and grocers.  It is not some conglomerate of banks, etc.  Consequently,

this is a dispute between the Genecco Defendants and all the other providers of

perishable commodities to Lenny Perry's who, like the Genecco Defendants, were not

paid in full for those commodities.  Indeed, it is likely that some of those others' produce

was sent to Genecco for the benefit of Lenny Perry's and Genecco with no payment to

those growers or suppliers.  This writer stated in the earlier Report and

Recommendation that it would not be "fair" to those <u>other</u> sellers of perishable goods to

permit <u>Genecco</u> to fare better than they do simply because Lenny Perry's did not just

go out of business and let a PACA trustee liquidate it, but also filed a Chapter 7

Petition.  (This writer should have explained that more fully, and does so here.)  As it

turns out, the Chapter 7 case is totally irrelevant.  That case was and remains a "no-

asset case" in bankruptcy terms.  Its existence caused confusion which was corrected

when Your Honor overruled (on August 9, 2012) the PACA Trust's "Motion to Strike"

the Genecco Defendants' affirmative defense of set-off.  (That motion to strike was

premised on the fact that Genecco chose to file a proof of claim in the bankruptcy

proceeding rather than assert a PACA claim in the plenary PACA civil suit that was

pending before Your Honor.)  By your ruling, the Genecco Defendants would have a

set-off if they showed a factual basis for it.  And if there was such a basis, it was left to

be determined whether the Defendants would have the same set-off rights in this case

(on the one hand) as they would have had in an action brought by or on behalf of

Lenny Perry's Produce, Inc. or by or on behalf of its Chapter 7 bankruptcy estate, or

only what set-off rights it would have if this were only a PACA case, on the other hand.

There are no assets in the Chapter 7 estate, and the Chapter 7 Trustee, Harold Bulan, Esq. has disclaimed or abandoned any claim against Genecco. This is now only a PACA matter.  And so we now address whether Genecco has established a right to any set-off at all, and if it did, then to what extent.

There is no dispute about the fact that the half-million-dollar dealings between the two produce dealers were carried <u>on their books</u> as reciprocal and off-setting accounts.[1]  Full set-off as per the Bankruptcy Code, or pro-rated as per PACA? That is the first issue.

I.

With benefit of the further oral argument that was heard last month, this writer agrees with counsel for the Trust that the reason that Genecco has no legal right to the full set-off rights that it would enjoy if the trust were "standing in the shoes" of Lenny Perry's, is that the Trust's rights are not now, and never were, subject to the limitations that Lenny Perry's suffered as to Genecco, or the defenses that Genecco had against Lenny Perry's.  This analysis begins with the fact that (to the best of the Court's knowledge) Lenny Perry's was not a farm.  Consequently, every item of perishable commodities it ever handled was held by it in trust, as were any proceeds

---

[1] The hundreds of pages of invoices offered in evidence (and undisputed), the Schedules filed by the Debtor Lenny Perry's, and the $256,000 Proof of Claim filed by Genecco in the Lenny Perry's bankruptcy case leave no triable question about the fact that they did business by way of such accounts.  Both sides will oppose this finding before Your Honor because the Trust opposes any set-off at all, and Genecco seeks a set-off that would let it walk away freely.  There is no mechanism by which this Court might defend its own findings and recommendations under such circumstances.

realized from those items.  Everything that Lenny Perry's Produce received from

suppliers were held by it in trust, and everything that Lenny Perry's received from

Genecco or was entitled to receive from Genecco on account of perishable

commodities delivered to Genecco was subject to the statutory PACA Trust in favor of

the growers, cooperatives, etc. which were owed money for those commodities.

That trust existed, by statute, from the moment that Lenny Perry's bought

or sold commodities subject to PACA.  It makes no difference whether or how Genecco

believed that it was satisfying its "debts" to Lenny Perry's.  Payment of cash, delivery of

other produce to Lenny Perry's (the "bartering" argument[2]), carrying a receivable on

Lenny Perry's books, Lenny Perry's permitting Genecco to forbear payment from Lenny

Perry's because Lenny Perry's would be sending some produce as an off-set, etc.  The

two businesses were exchanging assets that they held only in trust, and they did so as

if there was no trust.  The proceeds from $204,000 worth of produce that was provided

by Lenny Perry's to the Defendants never reached others who supplied some or all of

what Lenny Perry's sent to Genecco to "pay" for the produce that Genecco delivered to

Lenny Perry's.   Rather, a cozy deal was maintained that apparently worked well for

---

[2]At page 25 of the attached transcript, counsel for the Trust persuasively emphasized that there is
no evidence whatsoever that the discussion that one expects when "bartering" ever occurred between Lenny
Perry's and Genecco.  "I offer you this for that," or "Instead of cash, can I send you pineapples?"  Counsel
takes the argument too far in arguing that there were no "offsetting accounts."  But he is correct as to the
notion argued by Genecco that each delivery of commodities from one to the other extinguished prior
obligations to the extent of the value of the commodity delivered.  That argument must be rejected.  (To
remind the Court, the heart of Genecco's defense is that each delivery of groceries from one to the other
extinguished prior obligations, thus leaving only a credit balance in favor of Genecco when Lenny Perry's
filed bankruptcy.  Your Honor has agreed with the prior recommendation that there is no triable issue of fact
in favor of Genecco as to that "bartering" argument.)  Only the $256,000 vs. $204,000 degree of set-offs is
at issue.

those two entities in business terms, but left those who provided the produce to Lenny

Perry's "in the cold."

As noted above, the Trust should not be held subject either to the

limitations that Lenny Perry's would suffer as against Genecco, or to the defenses that

Genecco would have against Lenny Perry's.  To explain more fully, it might be said that

if Lenny Perry's had never been in bankruptcy, this would solely be a PACA matter.  In

that event, counsel for the PACA Trust <u>might</u> reluctantly agree that its claim against

Genecco would turn out the way that this Court has recommended to the District Court.

(The phrase "might reluctantly" relates to counsel's view as an advocate

that under PACA, sending produce (rather than money) at an obligee's request should

not be treated as "payment" of an outstanding PACA debt.  If Genecco had paid cash,

that cash might have been used to pay other PACA suppliers, as PACA requires.

Indeed, counsel for the PACA Trust has reserved [Transcript p.29, l. 16-21] the right to

appeal to the Second Circuit any final ruling by the District Court that grants any set-off

at all to the Genecco Defendants.  That said, counsel agreed at oral argument on

November 17 that if any set-off were in fact to be awarded as a final judgment, it should

be the set-off that this writer has recommended to the District Court - - a pro-rata set-off

as if Genecco had paid-in $204,000 to the Trust and received its *pro rata* share of its

$256,000 claim against the Trust.  (As of November 17, 2015 counsel for the Trust

estimated that Genecco would have to pay in to the Trust only $107,793.50, rather than

$204,000, so giving it a set-off of $96,981. [Transcript p. 10, l. 1-10.])

The N.Y. Lien Law provides an analogy.  What a building contractor receives or is owed for improvements to real estate are a trust for suppliers of labor or materials to that job.  Whatever other jobs the contractor might have are irrelevant. The trust does not extend to the contractor's rights to payment on other jobs, but any credits or set-offs, etc. that the contractor owes to suppliers on other jobs cannot be permitted to diminish the trust's rights as to the "job" at issue.

Consider this hypothetical.  A debtor is primarily a home builder, but also owns a builder's supply store.  Call the debtor "D."  "C" is a company that provides electrical boxes to D on credit not only for homes under construction but also for D's store for resale to third party customers.  But C also buys things from D's store on credit - - perhaps lumber.  And so at any given moment in time, there might be offsetting debts and credits as between the two.

By virtue of the Lien Law, no matter what the rights are as between the two as to all of their interactions, those must not be permitted to diminish the statutory rights of the trust that exists for the benefit of other suppliers to the construction of a home that C and D worked together.  There were unpaid suppliers at that job.  Any credits that C might derive from D that arise from their interactions at the store, or on other building jobs are not allowable as against the trust.

Now, going back to PACA.  What if Lenny Perry's Produce sold pots and pans as well as perishable commodities?  Indeed, what if Lenny Perry's were a large supermarket, and Genecco not only bought and sold PACA products on credit with

Lenny Perry's, but also bought and sold non-PACA products on credit with Lenny

Perry's.  The set-off rights as between Lenny Perry's and Genecco might well extend to

all of their dealings.  But as to other suppliers of PACA-products to Lenny Perry's, any

debts and credits that arose from non-PACA transactions between the two must not be

permitted to diminish their recovery.  That is why a PACA trust would not "stand in the

shoes" of such a grocery store.

          Now yet a step further.  One might be tempted to say that the non-PACA

dealings are "irrelevant."   In some cases that might be true.  But if PACA-trust assets

(whether cash received or produce received, or future creditors or receivables) were

devoted out-of-trust toward, for example, the non-produce offerings of such a grocer,

then all of the assets of the supermarket might be subject to the PACA trust, by statute,

regardless of traceability.

         The above hypothetical mis-description of Lenny Perry's and Genecco is,

of course, just that.  It is not a statement of this case.  But it does satisfy this writer that

Genecco's assertion that "whatever rights Genecco would have against Lenny Perry's

should be granted here," should be rejected.  Genecco should not be given credit at the

expense of other PACA creditors of Lenny Perry's.

         And so we set aside the hypothetical and go to the undisputed facts.  For

a long time Lenny Perry's and Genecco did business under an arrangement that

worked well for them, and maybe also worked well enough to permit Lenny Perry's to

stay in business, buying produce from other sellers of produce, and paying some of

those providers, as required for a while. But as happens so often, a good business

plan falls apart when one party closes down and the unpaid creditors challenge the

business plan that left them unpaid.[3] Eventually, Lenny Perry's Produce failed.

The way they did business was not consistent with PACA. PACA required

timely "payments" so that all providers of perishable agricultural commodities to Lenny

Perry's had a chance to receive cash payments from Genecco for what they provided.

Their business practice not only denied "others" that opportunity, but indeed probably

used produce that those "others" sold to Lenny Perry's (not <u>trust-free</u> produce)[4] to be

sent to Genecco to satisfy some debt owed by Genecco to Lenny Perry's as per their

comfortable dealings. That practice was not consistent with PACA and so is likened to

the non-PACA dealings considered in the above hypothetical.[5] (Indeed, Lenny Perry's

might have failed sooner if Genecco had insisted upon cash payments, and sooner

failure might have saved some other PACA creditors of Lenny Perry's some money.

---

[3]See, for example this Court's decision in *Wallach v. Ford Motor Company*, 486 B.R. 62, in which a sound business plan that ignored use of set-offs, and instead used a more efficient bookkeeping method, failed when the bankruptcy of Performance Transportation Services brought 11 U.S.C. § 547 to bear (treating as "voidable preferences" what would have been valid "set-offs").

[4]There has been no hint or suggestion that any produce sent by Lenny Perry's to Genecco to "pay" Genecco was not produce that was held in trust by Lenny Perry's. Stated more clearly, Lenny Perry's used produce that it did not "own" outright (it was a mere trustee under PACA) and used trust assets to off-set what it owed to Genecco. That business approach is violative of 11 U.S.C. § 541 (d).

[5]The analogy is this. When commodities dealers who are PACA licensees do business, as if PACA does not apply, we might think of those dealings as if they were dealings in pots and pans. Debts and credits as between the two may not reduce either one's liability to a PACA trust. The PACA Trust seems (to this writer) to be arguing on that basis, that Genecco should get no set-off at all. To this writer, it is not clear that PACA would not provide the pro-rata set-off that is recommended here. Rather, it is this writer's view that PACA does (or should) provide the pro-rated set-off in a case like this in which all dealings were in perishable commodities, and consideration flowed back and forth in perishable commodities rather than in hard goods.

Sometimes a creditor's assistance in keeping a failing business afloat past the zone of insolvency injures some who come a bit later.)  When all is considered, equity requires treatment that PACA would seem to require.  That is this writer's recommendation.


II

Your Honor's Order also asked why this writer, having previously recommended money judgment in favor of the Trust against Genecco Produce, Inc., declined to recommend money judgment against Co-Defendant David Genecco individually.            The attached Transcript addresses this issue at pp. 13, 14, 38-39.

The PACA Trust's request for money judgment against him personally is based solely upon the PACA provisions that were argued by the Trust.  This writer did not recommend money judgment against Mr. Genecco in the earlier Report and Recommendation because prompt satisfaction of a money judgment against his corporation would leave his personal home, etc. unencumbered.  The question now has resolved into interpretation of the Second Circuit's decision in *Coosemans Specialties, et al. v. Gargiulo,et. al* , 485 F.3d 701 (2007).  In that case, the Circuit affirmed a money judgment of approximately $1.7 million against a corporate grocer and an individual who was its President, sole shareholder and sole director.  A factor was involved in that case, and it sought over $1 million pursuant to the factoring agreement, while the corporation and its principal denied those allegations and asserted that the factor owed the corporation approximately $1.7 million.  That dispute remained pending while the

PACA creditors trust obtained its money judgments.  The individual argued that the district court prematurely held him personally liable because the corporate assets had not been exhausted, but rather were tied up in the litigation with the factoring firm.  He argued that cases from other circuits required PACA trust beneficiaries to await the results of the collateral litigation between the corporation and the factoring company and await the results of collection efforts, before they could hold him personally liable.  "We disagree.", said the Second Circuit.  "To hold [the principal] liable, plaintiffs need only show that 'the assets of the licensed commission, merchant, dealer, or broker are insufficient to satisfy the PACA liability.' . . . When PACA trust assets are tied up in litigation, or in the form of uncollected accounts receivable, they are insufficient to satisfy the PACA liability because they are not 'freely available' for 'prompt payment' to trust beneficiaries as the PACA regulations require.  7 C.F.R. §  46.46(d)(1), (e).  Accordingly, we agree with the District Court that the plaintiffs need not wait for the conclusion of [the corporation's] litigation or collection efforts before seeking recovery directly from [the principal]."

        The present case is factually far removed from the *Coosemans* case, and so it is important to determine the extent to which *Coosemans* should be applied here.  In *Coosemans* there was no bankruptcy issue, but it was clear that the business entity had no assets other than a lawsuit against a factor.  The *Coosemans* case would be directly presented in the present proceeding only if this were an action against Lenny Perry's Produce, Inc. and Lenny Perry personally (not against Genecco Produce and

Mr. Genecco) and if Lenny Perry and his company were to argue that they are in

litigation with Genecco trying to collect $204,000.  Here we have nothing like that.

Lenny Perry's went into bankruptcy and the Bankruptcy Trustee decided that there

were no assets in the 11 U.S.C. § 541 estate in the bankruptcy case; rather, everything

was subject to the PACA Trust.  And so the particular part of the *Coosemans* decision

that dealt with "trust assets . . . tied up in litigation" does not apply here.  Clearly Lenny

Perry's is broke, but we do not know the net worth of Genecco Produce, Inc.

        The part of that decision that dealt with dissipation of trust assets also is

not applicable here.  The Circuit said "An individual who is in a position to control the

assets of the PACA Trust and fails to preserve them, may be held personally liable to

the trust beneficiaries for breach of fiduciary duty."  Later the Circuit said "PACA

trustees 'are required to maintain trust assets in a manner that such assets are freely

available to satisfy outstanding obligations to sellers of perishable agricultural

commodities.' 7 C.F.R. § 46.46(d)(1) (emphasis added) [by the Circuit]).  PACA

regulations provide that '[any] act or omission which is inconsistent with this

responsibility, including dissipation of trust assets, is unlawful.' . . . 'Dissipation' is

defined as 'any act or failure to act which *could* result in the diversion of trust assets or

which *could* prejudice or impair the ability of unpaid suppliers, sellers, or agents to

recover money owed in connection with produce transactions.' . . .Thus to determine

whether a PACA trustee's actions or omissions constitute a breach of fiduciary duty, we

examine whether the trustee [here Genecco Produce and David Genecco] 'in any way

encumbered the funds or rendered them less freely available to PACA creditors'."

[Authorities omitted]  [*Coosemans Specialties*, above.]

Although the previous recommendation by this writer that money judgment not be entered against Mr. Genecco personally was based upon this writer's hope and expectation that a money judgment entered against Genecco Produce, Inc.,  promptly would be paid, it was not this writer's intention to suggest that such a result was required by law.  Indeed, the only binding case law (*Coosemans*) that the Trust argues in favor of a money judgment personally against David Genecco is not applicable, as explained above.  In sum, we know nothing about the Genecco corporation's ability to pay a money judgment, if entered.

David Genecco is indeed a PACA trustee, as is his corporation, and he caused the corporation not to pay cash to Lenny Perry's for the commodities it received in trust.  Of course he is required by PACA to "maintain trust assets in a manner" in which such assets are "freely available" to satisfy outstanding obligations to sellers of perishable agricultural commodities."  But for all we know, if we set Lenny Perry's aside, he has done so responsibly and in full accordance with the statutes and rules.  Also, his corporation might fully be able to satisfy a money judgment.  (Post-judgment discovery might disclose a need on the part of the PACA Trust to reach the personal assets of David Genecco.  Consequently, this writer's recommendation will suggest a judgment against David Genecco personally but only secondarily liable after Genecco Produce, Inc.)

## RECOMMENDATION

Having conducted the further proceedings in obedience to Your Honor's August 24, 2015, Order of Remand, this writer renews the recommendation that money judgment be entered against Genecco Produce, Inc. in an amount (to be calculated on the day that judgment is to be entered) that is the *difference* between what Genecco owed Lenny Perry's on the date of the Chapter 7 petition (and therefore owes to the PACA Trust) and the amount that Genecco would receive as a PACA Trust beneficiary upon its claim against the Trust.  The <u>claim</u> would be in the amount that Lenny Perry's owed Genecco on that date, but what it would <u>receive</u> is pro-rated.

It now is also recommended that such judgment also be entered against David Genecco, personally, but only secondarily, enforceable only if Genecco Produce, Inc., fails to satisfy a judgment within 60 days after a final judgment.

Dated:  December 28, 2015

Respectfully submitted,

s/Michael J. Kaplan

Michael J. Kaplan, U.S.B.J.